(Reap. Dec. 9633)

SAM YEUNG Co. *v.* UNITED STATES

Entry Nos. 10943, etc.

(Decided March 11, 1960)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plantiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

DONLON, Judge: Five appeals to reappraisement have been consolidated for purposes of trial. The merchandise is canned water chestnuts, which were shipped from Hong Kong in five lots and were entered at Chicago in March, April, and May 1953.

Plaintiff entered the five lots of chestnuts at invoice prices. Defendant seems to believe that the merchandise of reappraisement 243459–A was entered at other than invoice price, but the papers filed with the court by the collector do not support this.

Plaintiff's case here is that the merchandise should have been appraised at export value, and that invoice prices represent the export value.

Plaintiff's proofs make out at least a *prima facie* case for appraisement at export value. Defendant concedes that there is no foreign value. The litigated question is a question of fact, namely, how much is the export value.

Plaintiff adduced the testimony of Mr. Chek Sam Jon, owner of Sam Yeung Co., plaintiff. Plaintiff also introduced into evidence the affidavit of Mr. Chan Shiu On, executed in Hong Kong. Mr. Chan described himself as the assistant manager and secretary of Howe Tack Co., Ltd., since February 1952. Howe Tack Co., Ltd., was the Hong Kong seller from whom plaintiff bought the canned water chestnuts of these appeals.

Defendant presented no witnesses. However, counsel for defendant vigorously cross-examined Mr. Chek. Defendant introduced, over plaintiff's objection, a letter of the acting supervising customs agent in Chicago, addressed to the appraiser of merchandise in Chicago, and certified by the Customs Information Exchange. In this letter, there is recited *verbatim* a report of the supervising customs agent in New York on his visit to the Sam Yeung Co., and his interview there with "Mr. C. N. Jon, principal shareholder and manager, with regard to these importations."

Mr. Chek testified on direct examination that these were canned *whole*, not sliced, water chestnuts; that he personally placed the order; that he travels all over the United States, and he goes to Hong Kong

once a year; and that his office is at 120 Wall Street, New York. Shown the affidavit of Mr. Chan Shiu On (collective exhibit 1), Mr. Chek said that was the merchandise sent to him.

On cross-examination, Mr. Chek identified Lee's Agency of San Francisco (mentioned in the Chan affidavit) as another Chinese importer, not affiliated in any way with plaintiff and having no financial relationship with it. As to the merchandise, Mr. Chek said he went to Chicago and looked at the merchandise, and looked also when he was in Hong Kong. While he did not look at every case, he did inspect the merchandise of all five shipments, in the plant of his customer, at Archbold, Ohio, "one of our big buyers." He further stated that "we always use whole water chestnuts, mostly for the canners, you know, the chop suey canners we sold to." (R. 11.)

Defendant was not able to shake the witness from his firm conviction that these were whole water chestnuts and were ordered as such. The reason why this line of testimony is significant is that sliced water chestnuts are said to be slightly more expensive than whole water chestnuts.

Further on cross-examination, the witness said that he got no lower price because he bought a large quantity; that there was no quantity discount; and that the exporter from whom he purchased in Hong Kong offers to everybody at the same price, regardless of quantity. "I compare what they offer to other people before I buy." (R. 16.)

The affidavit of Chan Shiu On (exhibit 1) detailed all sales of canned water chestnuts made by Howe Tack Co., Ltd., between February 5, 1953, and August 31, 1953, for export to the United States. There were no sales in 1953 before February 5 or after August 31. Eight sales are reported as f.o.b. Hong Kong. One sale is reported as f.a.s. Hong Kong. (None is reported as c.i.f. New York.) Of the nine sales, six were to plaintiff and three were to Lee's Agency of San Francisco. Sales made from February 7, 1953, to April 13, 1953, inclusive, were at $11.50 per case, United States dollars. On April 9, 1953, there was a sale to plaintiff of 1,105 cases, at the $11.50 price. Four days later, on April 13, 1953, 70 cases were sold to Lee's Agency, also at $11.50 per case. On August 22, 1953, Lee's Agency bought 130 cases at $10.50, United States dollars, and, on August 31, 1953, plaintiff bought 167 cases at the $10.50 price.

Plaintiff has overcome the presumption that the appraiser's valuation is correct, and has made out a *prima facie* case for export valuation at invoice prices.

Defendant appears to rely for rebuttal on "facts" alleged as proven by the report of the supervising customs agent at New York. (Exhibit A.)

One alleged "fact" is the report statement that prices for "similar" merchandise exported from Hong Kong in March 1953 were $12.86

per case c.i.f. New York for 100 cases, and $13.20 c.i.f. New York for 17 cases. Defendant did not attempt to show any sales of "such" merchandise, nor to reconcile prices reported as c.i.f. New York with f.o.b. and f.a.s. Hong Kong prices proved by the affidavit of Chan Shiu On (exhibit 1).

It is an established principle of customs valuation that the statutory words "such" and "similar" are not synonymous. Evidence as to the export value of "similar" merchandise will be considered only in the absence of evidence as to the export value of "such" merchandise. *United States* v. *Meadows Wye & Co., Inc.*, 15 Ct. Cust. Appls. 451.

Here, plaintiff has adduced evidence as to export value of this very merchandise and other *such* merchandise during the entire year in which export occurred. Defendant's only evidence as to export value is as to prices of two lots of merchandise conceded to be merely "similar," and during 1 month only of the export period.

The other alleged "fact" on which defendant leans in its brief (p. 8) is not even reported as a "fact." It is the cryptic comment of a customs agent in New York in his report (exhibit A) that "Mr. Jon's explanation of receiving a special price for quantity has to be considered."

There is no evidence that Mr. Chek Sam Jon made any such "explanation." He was on the witness stand. He was vigorously and extensively cross-examined by defendant's counsel. Yet counsel did not ask Mr. Chek whether he had made any such a statement to the customs agent. Mr. Chek stoutly insisted and reiterated that he did not receive any quantity discount. The Chan affidavit supports this, for sales to Lee's Agency of smaller quantities in the same period were at the same prices plaintiff paid for the larger quantities it purchased.

Knowing he was about to seek introduction into the record of the custom agent's report, defendant's counsel could have thrown light on the report innuendo he asserts as fact, by a simple question to Mr. Chek. Or, since it was a New York customs agent who made the report, defendant's counsel might have called the local agent to the stand. He did neither.

The slantwise reference to an interview "explanation" that is not even directly alleged and certainly has not been proven, can not outweigh the clear and unequivocal testimony of the witness in open court.

Hearsay reports, even when admissible under the somewhat relaxed rules of evidence that prevail in appeals for reappraisement, are not to be given the same weight as oral testimony of witnesses in open court, who are subject to cross-examination and may be observed by the judge and, if he thinks it necessary in order to arrive at the facts, may be questioned by him.

I find as facts:

1. That the merchandise of these appeals is canned whole water chestnuts, exported from Hong Kong during the period from February 1953 to April 1953.

2. That, at the time of such exportations, such or similar merchandise was not freely offered in Hong Kong for sale to all purchasers for home consumption.

3. That, at the time of such exportations, such merchandise was freely offered for sale to all purchasers for export to the United States in the ordinary course of trade at $11.50 per case, United States dollars, f.o.b. or f.a.s. Hong Kong, net, packed, without regard to quantity.

I conclude as a matter of law:

1. That, at the time of the exportations there was no foreign value for such or similar merchandise, as defined in section 402(c) of the Tariff Act of 1930, as amended.

2. That export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis of value for appraisement of such merchandise.

3. That the export value of such merchandise is $11.50 per case, United States dollars, net, packed.

Judgment will be entered accordingly.